```
 1              IN THE DISTRICT COURT OF GUAM

 2                     TERRITORY OF GUAM

 3

 4

 5   UNITED STATES OF AMERICA,    (
                                  )
 6           Plaintiff,           (
                                  )
 7       vs.                      ( CASE NO. CR95-00114
                                  )
 8   WARREN ANTONIO LEE,          (
                                  )
 9                                (
            Defendant.            (
10                                )
     _____ )
11
                              Friday, September 29, 1995
12                            MOTION TO DISCHARGE ATTORNEY

13

14

15

16                   TRANSCRIPT OF PROCEEDINGS

17
     B E F O R E:   THE HONORABLE JOHN S. UNPINGCO
18                  Chief District Judge

19

20

21
     APPEARANCES:
22
     For the Plaintiff:    UNITED STATES ATTORNEY
23                         BY:  MARK KONDAS, Esq.
                           Assistant U.S. Attorney
24
     For the Defendant:    FEDERAL PUBLIC DEFENDER
25                         BY:  ROBERT E. HARTSOCK, Esq.
                           Asst. Federal Public Defender
```

**ORIGINAL**

*Wanda M. Miles, C.S.R.*
*Official Court Reporter*
*United States District Court*
*Agana, Guam 96910*

AGANA, GUAM; FRIDAY, SEPTEMBER 29, 1995; 10:10 A.M.

\*\*\*

THE CLERK: Criminal Case 95-00114, United States of America versus Warren Antonio Lee, Motion to Discharge Counsel.

Counsel, state your appearances.

MR. KONDAS: Mark Kondas on behalf of the United States.

MR. HARTSOCK: Robert Hartsock with the defendant, Your Honor.

The defendant is present in court.

THE COURT: Now, this motion, the court is being asked that the defendant be allowed to withdraw?

Mr. Hartsock, we need to put something on the record. If you're uncomfortable here in open court, we can take it in chambers.

MR. HARTSOCK: No, Your Honor, I have no problem doing it in court.

My client has requested that I make a motion that I be discharged as counsel, and I did that. I've provided an affidavit.

What it basically comes down to, I've attempted to make clear to my client what the ramifications are likely to be, based on his plea agreement that he entered into, and what the Sentencing Guidelines are

likely to provide, as I have gathered information from him and from various sources, the U.S. Probation Office and U.S. Attorney. And I think he is dissatisfied with that information I've provided him. And I think he's also been dissatisfied that I haven't responded as often as he'd like to his calls to come out and see him, talk to him.

Perhaps it would be better if Mr. Lee presented to the court what his concerns are.

THE COURT: Yes. Mr. Lee, are you comfortable here in court or would you like to do this in chambers?

THE DEFENDANT: No, I'm not comfortable here.

THE COURT: Very well, we'll take this in chambers. We'll hold this to the end of the docket this afternoon. We have other cases.

MR. HARTSOCK: That's fine, Your Honor. Thank you.

(Whereupon this case recessed while the court
            heard other matters on the docket.)


                              ***

(Proceedings resumed at 2:33 p.m.)

THE COURT: We're going to go back to this other case; I have to conduct an *in camera* hearing of Mr. Lee.

3

Case 1:95-cr-00114   Document 21   Filed 11/02/95   Page 3 of 18

likely to provide, as I have gathered information from him and from various sources, the U.S. Probation Office and U.S. Attorney. And I think he is dissatisfied with that information I've provided him. And I think he's also been dissatisfied that I haven't responded as often as he'd like to his calls to come out and see him, talk to him.

Perhaps it would be better if Mr. Lee presented to the court what his concerns are.

THE COURT: Yes. Mr. Lee, are you comfortable here in court or would you like to do this in chambers?

THE DEFENDANT: No, I'm not comfortable here.

THE COURT: Very well, we'll take this in chambers. We'll hold this to the end of the docket this afternoon. We have other cases.

MR. HARTSOCK: That's fine, Your Honor. Thank you.

(Whereupon this case recessed while the court
                heard other matters on the docket.)

***

(Proceedings resumed at 2:33 p.m.)

THE COURT: We're going to go back to this other case; I have to conduct an *in camera* hearing of Mr. Lee.

1   And Mr. Hartsock, if you'll just stand by,
2   please?
3       MR. HARTSOCK: Yes, Your Honor.
4       THE COURT: Or if you want, you can accompany
5   us.
6       MR. HARTSOCK: Would he prefer that I not --
7       THE COURT: I don't know, I want to ask him.
8   Let's get the defendant back here.
9       MR. HARTSOCK: I don't have a problem with it.
10      (The defendant was brought into court.)
11      THE COURT: Mr. Lee, do you wish to address me
12  by yourself, and the court reporter and a marshal
13  present?
14      THE DEFENDANT: If it's possible.
15      THE COURT: Or do you have any objections to
16  your lawyer being present?
17      THE DEFENDANT: Is it possible that we can just
18  talk ourselves?
19      THE COURT: We can, but it has to be recorded,
20  though --
21      THE DEFENDANT: That's fine.
22      THE COURT: -- whatever we discuss, okay, and
23  marshals have to be in the room as well.
24      THE DEFENDANT: That's fine.
25      THE COURT: And you wish your lawyer excluded

then?

THE DEFENDANT: Yes.

MR. HARTSOCK: I have no objections.

THE COURT: Let's do that then.

Mr. Hartsock, if you'll just hang around.

MR. HARTSOCK: Yes, Your Honor.

(Whereupon the hearing resumed in chambers as follows:)

THE COURT: Okay, Mr. Lee, proceed.

THE DEFENDANT: I have to get --

THE COURT: Collect yourself.

THE DEFENDANT: -- get rolling, because I'm just very nervous.

THE COURT: Okay.

THE DEFENDANT: Since the beginning when I pled guilty -- I didn't want to plead guilty in the first place, I wanted to plead *nolo contendere*.

THE COURT: *Nolo.*

THE DEFENDANT: But in order for me to get the plea agreement, I mean plea bargain, in order to get out, I had to take the guilty plea. I didn't want to do that.

THE COURT: Okay.

THE DEFENDANT: But Hartsock said that I had to, being as though that I did that. And I got out and

everything, and I said that I was going to catch -- help catch some people or whatever, I have no idea of who these people really are.

THE COURT: Okay.

THE DEFENDANT: I've been -- even the perjury before the grand jury and everything like that, I have been lying to everybody because I was under duress in the first place. I, basically, I'm the sacrifice lamb in this whole thing.

THE COURT: Okay, but tell me first, you need to tell me why you want to get rid of Hartsock.

THE DEFENDANT: I didn't feel as though he was doing anything. The only thing that he would tell me is that you should be grateful that you're getting a hundred and eighteen months or whatever, something like that. And you've never had a steady job for 15 years or something, so you should be grateful that you're having this time now to work, and those type of things I don't want to hear.

I want to hear is it possible for me to get lesser time because this is my first drug charge, or something like that, or whatever. But he's never told me anything, all he does is show me the book.

THE COURT: Sentencing table.

THE DEFENDANT: And I didn't want to plead

guilty in the first place, but I did it because he said that was the right thing to do and it would lessen my sentence or whatever. I don't know how.

Now of course, you know, a lot of people talk up at DOC and things like that. There has been a whole lot of bad things that they've been saying, whatever, as well. I know that he and Rosann and John, and all you guys might be friends or something, and that makes me feel kind of like I'm -- like I know that I can't win, because it seems as though everyone is against me, and I'd rather have an attorney who isn't, you know, court appointed or whatever. And that's what I tried to do at first, but I couldn't do it because of everything else and people saying that I can't sell my assets to retain an attorney.

THE COURT: Now, wait a minute, let me ask you something here. What I'm hearing from you is that if the court knows a lawyer and it appoints that lawyer to be your lawyer, you can't win against the system; is that what you're saying? What is it exactly?

THE DEFENDANT: It's not that exactly.

THE COURT: Does that make you uncomfortable being the fact that the court knows the lawyers? The court knows every lawyer here because this is a small place, and so I can't help that, okay?

THE DEFENDANT: Right.

THE COURT: You need to understand that because the court knows somebody doesn't mean that the chips are stacked against you.

THE DEFENDANT: It just seems as though it is in this instance, because of the fact when he comes to visit me, he's always saying, "I know John Glang and I know Rosann, and we're good friends," and ta-da ta-da ta-da. And it's just like --

THE COURT: Well, they deal with each other a lot, and it doesn't mean --

THE DEFENDANT: -- they're telling me that it could possibly go in my favor, there's nothing ever positive about this whole thing, it's just that you're getting this amount of time and you should be grateful for that. And I saved you $50,000 because you didn't flee the island.

THE COURT: But can you still communicate with Hartsock?

THE DEFENDANT: I can't seem to do that, because he's overloaded with cases, he told me that himself. That's the reason why he's constantly late with getting back to me, because he has so many cases that he has to have done by a certain time, or whatever. So I said, well, that's better for you if that's one

less case that you have to worry about.

I have requested to get Michael Phillips or whatever, or Howard Trapp or whatever, but they said that they couldn't do it because of whatever, I don't know.

THE COURT: Well, you know, when you're getting a court-appointed lawyer, you don't have a choice in the matter.

THE DEFENDANT: Right, I was told I can get anybody except that it wasn't --

THE COURT: Well, no, somebody is telling you wrong.

THE DEFENDANT: -- except people that were included in my case.

THE COURT: Somebody is telling you wrong. That's the problem with jailhouse lawyers, they think they know the law; they don't know the law. What we do is pick off a list, and the next one there, you get that.

Now the fact that Hartsock is telling you he knows these people and all that, that's not necessarily bad, because it might cut in your favor, that he may be counseling you based on his knowledge of how these people are going to treat your case. Okay? So that's not necessarily bad.

You're saying nothing is positive, and that's true, nothing may well be positive, but nobody asked you to come here and -- with what it is that you supposedly had, okay? I'm not saying you're guilty and all that, but there was some reason for you to be arrested, right?

THE DEFENDANT: Exactly.

THE COURT: So that was the problem right there. But now let's get back to the lawyer. I'm interested in, can you still work with Hartsock or you can't work with him, because your defense is what's important to me.

THE DEFENDANT: Right.

THE COURT: And regardless of how you may feel towards him, can you still communicate with him so that you can cooperate in presenting a good defense, or in matters in mitigation, say, of your sentence?

THE DEFENDANT: Well, I would feel better if I was appointed a different attorney.

THE COURT: Okay. Now, you have to understand, though, that if the court appoints you a second attorney, and say you still have this discomfort with him --

THE DEFENDANT: No.

THE COURT: -- the court can't keep going down the list to appoint an attorney until you hit someone

you're comfortable with.

THE DEFENDANT: I understand that.

THE COURT: Okay. As long as you understand that. Now, you're saying Hartsock is very busy, and he's handling a lot of people. That's the case with just about all the lawyers around here that are any good, okay?

THE DEFENDANT: Correct.

THE COURT: And so if the next lawyer comes up and says to you, hey, I've got quite a few cases I'm handling, okay, I can only get to you at certain points in time, you need to understand that the court is not going to be very patient in terms of listening to you firing your lawyers because he couldn't get to you as often or as much as you would like.

THE DEFENDANT: Even the communication factor, like I would ask him to do things for me and he doesn't return. Like for instance, okay, so I'm going to prison and whatever, can you get me brochures or something about these prisons, anything like that, so I can possibly figure out if I can go to one of them.

THE COURT: What did he say?

THE DEFENDANT: That he would get back to me on that, and never did.

THE COURT: Okay. What else have you got on

```
 1  your list?
 2          THE DEFENDANT:  I'm sorry?
 3          THE COURT:  Have you got something else?
 4          THE DEFENDANT:  Well, it was just the conflict
 5  of interest, it seems as though there was favoritism
 6  from the prosecutor and the attorney, like they were
 7  friends or something like that.  He said that I should
 8  be grateful for the 118 months, he has a heavy workload
 9  already.  He didn't want me to plead no contest.  About
10  perjuring myself on the court, him knowing about that,
11  and no investigation of technicalities or anything.  And
12  that's basically it.
13          THE COURT:  Let me dispel one point here for
14  you that I can easily do.
15          First of all, I'm going to grant the request
16  for Hartsock to withdraw, but whomever you get next, you
17  know, I hope you can work with.  Okay?
18          But let me dispel one thing.  Brochures on the
19  prison and whatnot, what happens is it's not the court
20  or your attorney that assigns, if you should be
21  sentenced to prison, it is not us who assign where you
22  go, it is the Bureau of Prisons.
23          THE DEFENDANT:  So he has nothing to do with
24  that?
25          THE COURT:  Well, he hasn't, and neither do I.
```

1  THE DEFENDANT: Right.

2  THE COURT: So in terms of brochures of a
3  facility that you may be sent to, I don't think he
4  knows. I don't know. I can tell you I don't know which
5  facility you're going to be sent to. There's facilities
6  all over the country, sometimes two or three in a state,
7  sometimes more. Okay? And they all have their own
8  brochures. And so the Bureau of Prisons is the one that
9  has the authority to assign a prisoner to an institution
10 under their control.

11 THE DEFENDANT: The Bureau in Colorado?

12 THE COURT: No, no, the Bureau of Prisons.
13 Okay? They have prisons in California, they have
14 prisons in Washington State, in Alabama, okay, in
15 Georgia, in New York, you know, it's all over the
16 country.

17 THE DEFENDANT: Right, because I had asked him
18 could I be placed on the East Coast if possible.

19 THE COURT: And you can make that request now.

20 THE DEFENDANT: Okay.

21 THE COURT: But even if you make the request,
22 there's no guarantee, because it's a space available
23 basis, so I don't want that to be a bone of contention
24 between you and your next lawyer; do you understand?

25 THE DEFENDANT: I understand.

           THE COURT: I'm trying to explain to you,
neither your lawyer or the court has any authority in
that area, of where you're going to be assigned, should
you be sent to prison.
           THE DEFENDANT: Right.
           THE COURT: So don't let that be a bone of
contention.
           THE DEFENDANT: It's just the investigation
that I didn't feel was sufficient on his behalf, as far
as I was concerned.
           THE COURT: So in your mind you just cannot
depend on Mr. Hartsock; is that what you're saying?
           THE DEFENDANT: Right.
           THE COURT: You don't want to trust him with
your life?
           THE DEFENDANT: Because we have been talking
about it.
           THE COURT: Especially if it involves the
possibility of going to prison; correct?
           THE DEFENDANT: Right.
           THE COURT: Okay. And you feel that he's been
ineffective in terms of -- or not ineffective, but he
has not been helping you as much as you think he should?
           THE DEFENDANT: Right.
           THE COURT: Okay. And you would like to start

1. with another lawyer to assist you, and to go through
2. some of the things that you have talked about with
3. Hartsock; correct?
4.       THE DEFENDANT: Correct. The thing is I
5. haven't, through all the investigations or whatever, has
6. gone on, he hasn't done anything that I feel as though
7. that's helping me.
8.       THE COURT: Okay. Have you asked him the
9. things he's done, if he's done any?
10.       THE DEFENDANT: He would just basically show me
11. the book on how much time I'm getting. I haven't been
12. caught with anything, I'm taking the blame because I'm
13. under duress for the whole thing. I'm taking the blame
14. for four other people that was involved in this whole
15. thing. I figured he was going to help me with that, but
16. he hasn't. The next attorney I'm appointed to or with,
17. or whatever, I'll show him this, and -- or whatever, and
18. let me read the letter as well, and tell him.
19.       THE COURT: Why don't we do that, we'll appoint
20. another attorney for you, and we'll -- you know, we'll
21. give it a shot, that is, you're going to have another
22. opportunity.
23.       THE DEFENDANT: Thank you.
24.       THE COURT: But I need you to understand this,
25. that I don't want you to think that just because you

asked for another attorney, that you're automatically going to get another one, because there's only so many attorneys that we have.

And number two, it's within the court's discretion as to whether to assign you another attorney or not. Okay?

THE DEFENDANT: So you're saying that I'll possibly be --

THE COURT: Well, what I'm trying to tell you is I don't want a merry-go-round of attorneys coming to you, you firing them, I don't want you to think that you can do that.

THE DEFENDANT: I'm not thinking that.

THE COURT: It's not within your power.

THE DEFENDANT: I'm not saying that.

THE COURT: It's not within your power. I'm not going to allow you to keep firing attorneys just because you don't get along with them.

THE DEFENDANT: Let me say this much. I don't want to sit up at DOC any longer if I were to be sentenced, so I would like this to be expedited as soon as possible, no matter which way it goes.

THE COURT: Why don't we do that then.

Let's go back in the courtroom.

///

17

(Proceedings resumed in open court.)

THE COURT: The court has reviewed -- has considered, rather, the testimony of the defendant in this case, Mr. Lee, and based on the breakdown of communications between himself and his attorney, the court grants the motion for the withdrawal of defense counsel Mr. Hartsock, and the court appoints Mr. Joaquin Arriola, Junior to represent the defendant in this case. The court is signing the order now.

Mr. Lee, the court clerk will assist in getting -- or will contact Mr. Arriola to contact you. Okay?

THE DEFENDANT: (Nodding affirmatively.)

THE COURT: So try your best to communicate with him, and do your best to get along with him. And we'll see how it goes.

THE DEFENDANT: Thank you.

THE COURT: Thank you very much.

(Proceedings concluded at 2:51 p.m.)

\*\*\*

CERTIFICATE OF REPORTER

CITY OF AGANA          )
                       )  ss.
TERRITORY OF GUAM      )

    I, Wanda M. Miles, Official Court Reporter of the District Court of Guam, do hereby certify the foregoing pages 1-17, inclusive, to be a true and correct transcript of the shorthand notes taken by me of the within-entitled proceedings at the time and date therein set forth.

    Dated this 2nd day of November, 1995.

*Wanda M. Miles*